Michael D. Bergman
Federal Trade Commission
600 Pennsylvania Avenue NW, H-576
Washington, D.C.  20580
(202) 326-3184
Facsimile: (202) 326-2477
mbergman@ftc.gov

*Attorney for Petitioner*
*Federal Trade Commission*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, | ) ) ) |
| Petitioner, | ) ) |
| v. | ) Misc. Case No. mc-14-02- m-JCL |
| COUNTRYWIDE PERIODICALS, LLC, | ) ) ) |
| Respondent. | ) ) ) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## PETITION OF THE FEDERAL TRADE COMMISSION FOR AN
## ORDER TO ENFORCE CIVIL INVESTIGATIVE DEMAND

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES....................................................................................iii

I.    INTRODUCTION.......................................................................... 1

II.   JURISDICTION AND VENUE .................................................... 3

III.  STATEMENT OF FACTS ........................................................... 4

    A.    The FTC's Investigation and Issuance of the CID ............................... 4

    B.    Countrywide's Petition to Quash and the Commission's Ruling......... 6

    C.    Countrywide's Incomplete Responses to the CID
        Specifications........................................................................... 6

IV.   LEGAL STANDARD FOR ENFORCEMENT................................7

V.    ARGUMENT................................................................................ 9

    A.    The CID is Within the Lawful Authority of the Agency...................... 9

    B.    The Procedural Requirements were Followed.................................... 11

    C.    The CID Seeks Information and Documents that are Relevant
        and Material to the Commission's Investigation............................... 12

    D.    The CID Requests are Neither Overbroad Nor
        Unduly Burdensome .......................................................... 13

CONCLUSION .................................................................................. 14

CERTIFICATE OF COMPLIANCE ........................................................................

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE**

*EEOC v. Fed. Express Corp.,*
     558 F.3d 842 (9th Cir. 2008) ............................................................. 8, 12

*EEOC v. Karuk Tribe Hous. Auth.,*
     260 F.3d 1071 (9th Cir. 2001) ........................................................ 7, 8, 12

*EEOC v. Shell Oil Co.,*
     466 U.S. 54 (1984) ................................................................................ 12

*EEOC v. St. Regis Paper Co.,*
     717 F.2d 1302 (9th Cir. 1983) ................................................................ 8

*FCC v. Schreiber,*
     381 U.S. 279 (1965) ............................................................................... 11

*FDIC v. Garner,*
     126 F.3d 1138 (9th Cir. 1997) ............................................................... 11

*FTC v. Carter,*
     636 F.2d 781 (D.C. Cir. 1980) ................................................................ 8

*FTC v. Invention Submission Corp.,*
     1991-1 Trade Cas. (CCH) ¶ 69,338, 1991 U.S. Dist. LEXIS 5523,
     (D.D.C. 1991), *aff'd,* 965 F.2d 1086 (D.C. Cir. 1992) ........................ 10

*FTC v. Nat'l Processing Co.,*
     No. 13-23437-MC-ROSENBAUM (S.D. Fla. Dec. 18, 2013) ............... 10

*FTC v. O'Connell Assocs., Inc.,*
     828 F. Supp. 165 (E.D.N.Y. 1993) .......................................................... 2

*FTC v. Sherry,*
     1969 WL 98583, 13 Fed. R. Serv.2d 1382 (D.D.C. 1969) ..................... 8

*FTC v. Texaco, Inc.*,
  555 F.2d 862 (D.C. Cir. 1977) ........................................................................ 14

*FTC v. Your Magazine Provider, Inc.*,
  No. CV-08-64-M-DWM (D. Mont. Oct. 7, 2009), ECF No. 91 .......................... 1

*McVane v. FDIC (In re McVane)*,
  44 F.3d 1127 (2d Cir. 1995) ............................................................................. 12

*NLRB v. N. Bay Plumbing, Inc.*,
  102 F.3d 1005 (9th Cir. 1996) ............................................................................ 8

*RNR Enters., Inc. v. SEC*,
  122 F.3d 93 (2d Cir. 1997) ............................................................................... 12

*United States v. Morton Salt Co.*,
  338 U.S. 632 (1950) ............................................................................... 8, 11, 12

*Venn v. United States*,
  400 F.2d 207 (5th Cir. 1968) .............................................................................. 8

**STATUTES**

Antitrust Civil Process Act, 15 U.S.C. § 1311 ......................................................... 2

Federal Trade Commission Act

  15 U.S.C. § 43 ..................................................................................................... 9

  15 U.S.C. § 45 ..................................................................................................... 2

  15 U.S.C. § 46(a) ................................................................................................. 9

  15 U.S.C. § 56 ..................................................................................................... 3

  15 U.S.C. § 57b-1 ................................................................................................ 2

  15 U.S.C. § 57b-1(c) ........................................................................................... 3

  15 U.S.C. § 57b-1(c)(2) ..................................................................................... 11

  15 U.S.C. § 57b-1(e) ........................................................................................... 3

  15 U.S.C. § 57b-1(f) .......................................................................................... 10

15 U.S.C. § 57b-1(h) ............................................................................ 3

15 U.S.C. § 57b-2 ........................................................................... 6, 10

**LEGISLATIVE**

H.R. Cong. Rep. No. 917, 96th Cong., 2d Sess. 32 (1980),
*reprinted in* 1980 U.S.C.C.A.N. 1143 ............................................... 2

S. Rep. No. 500, 96th Cong., 1st Sess. 23-25 (1979),
*reprinted in* 1980 U.S.C.C.A.N. 1102 ............................................ 2

**RULES AND REGULATIONS**

16 C.F.R. pt. 310 ............................................................................... 2

16 C.F.R. § 2.6 ................................................................................ 11

16 C.F.R. § 2.7 ................................................................................ 11

16 C.F.R. § 2.10(a) .......................................................................... 10

16 C.F.R. § 4.4 ................................................................................ 11

16 C.F.R. § 4.10 .......................................................................... 6, 10

Fed. R. Civ. P. 26(a)(1)(B)(v) ........................................................... 8

## EXHIBIT INDEX

1. Declaration of Megan A. Bartley (May 19, 2014) (with Appendix A: Countrywide's Responses to the CID) ("Bartley Decl.")

2. Resolution Directing Use of Compulsory Process in a Nonpublic Investigation of Telemarketers, Sellers, Suppliers, or Others, April 11, 2011 (FTC File No. 0123145) ("Resolution")

3. Civil Investigative Demand Issued to Countrywide Periodicals, LLC (May 6, 2013) ("CID")

4. Countrywide Periodicals, LLC's Petition to Quash Civil Investigative Demand (May 31, 2013) ("Countrywide's Petition to Quash")

5. Federal Trade Commission's Order Denying Petition to Quash Civil Investigative Demand (July 3, 2013) ("FTC's Order")

6. *FTC v. Nat'l Processing Co.*, No. 13-23437-MC-ROSENBAUM (S.D. Fla. Dec. 18, 2013) (unpublished opinion)

## I.    INTRODUCTION

The FTC is investigating the magazine subscription telemarketing practices of

Countrywide Periodicals, LLC ("Countrywide") a company owned and controlled by

Jason W. Ellsworth.  Ellsworth and another company he controls, Your Magazine

Provider, Inc. ("YMP") settled allegations with the Commission in 2009 that resulted

in a permanent injunction and monetary relief.[1]  The Commission is concurrently

moving in that action for contempt and to enforce subpoenas issued under Fed. R. Civ.

P. 45.[2]

After the FTC settled its case against Ellsworth and YMP, it began receiving

hundreds of consumer complaints about the marketing practices of  Countrywide, a

company that was not a defendant in the original action but is closely related to those

defendants.  Accordingly, the Commission began an investigation of Countrywide and

---

[1] The 2009 settlement prohibited Ellsworth and YMP from engaging in unfair or
deceptive practices in the sale of magazine subscriptions, required the defendants to
pay $600,000 in equitable monetary relief, and established procedures for monitoring
compliance with the order.  Stipulated Final Judgment and Order for Permanent
Injunction at 8-24, *FTC v. Your Magazine Provider, Inc.*, No. CV-08-64-M-DWM (D.
Mont. Oct. 7, 2009), ECF No. 91 (attached to Petition Exhibit ("Pet. Exh." 4),
Countrywide's Petition to Quash).

[2] *See id.,* Motion to Hold Jason W. Ellsworth in Contempt of this Court's October 7,
2009 Order and to Enforce Subpoenas Issued Pursuant to that Order.  The Court may
[footnote continues on next page]

1

issued a civil investigative demand ("CID") to it in order to determine whether that

firm has engaged in unfair or deceptive acts or practices or deceptive or abusive

telemarketing acts or practices in connection with its sales of magazine subscriptions.[3]

Countrywide has not complied with most of the CID and the Commission has

accordingly brought this enforcement action to secure compliance pursuant to Section

20 of the FTC Act.[4]  15 U.S.C. § 57b-1.

    This statutory enforcement proceeding is thus closely related to, but governed by

different standards than, the contempt and Fed. R. Civ. P. 45 motions that the

Commission has concurrently filed in the original *Your Magazine Provider* proceeding

against the defendants and others.  The Court may wish to consider this enforcement

proceeding and the pending discovery motions at the same time.

---

wish to refer to that motion for a more complete background and context in which the
instant Civil Investigative Demand ("CID") enforcement proceeding arises.

[3] 15 U.S.C. § 45; 16 C.F.R. pt. 310.

[4] A CID is a form of administrative compulsory process akin to a subpoena *duces
tecum* or subpoena *ad testificandum*.  The FTC's authority to issue civil investigative
demands under Section 20 of the FTC Act, 15 U.S.C. § 57b-1, was modeled on the
Department of Justice's authority to issue civil investigative demands under the
Antitrust Civil Process Act, 15 U.S.C. § 1311.  *See* H.R.Cong.Rep. No. 917, 96th
Cong., 2d Sess. 32 (1980), *reprinted in* 1980 U.S.C.C.A.N. 1143, 1149; S.Rep. No.
500, 96th Cong., 1st Sess. 23–25 (1979), *reprinted in* 1980 U.S.C.C.A.N. 1102, 1124–
26.  *See also FTC v. O'Connell Assocs., Inc.,* 828 F. Supp. 165, 169 (E.D.N.Y. 1993).

## II.    JURISDICTION AND VENUE

Section 20(c) of the FTC Act, 15 U.S.C. § 57b-1(c), authorizes the Commission to issue CIDs to require the production of documents or information relating to any matter under investigation.  If the recipient does not comply, the Commission may petition the district court for an enforcement order, 15 U.S.C. § 57b-1(e); and the court is empowered "to enter such . . . orders as may be required."  15 U.S.C. § 57b-1(h). Section 20(e) of the FTC Act authorizes the Commission to seek enforcement of its CID in any judicial district where the CID recipient "resides, is found, or transacts business."  Section 16 of the FTC Act, 15 U.S.C. § 56, provides authority to the Commission to litigate such matters in its own name.  This Court is empowered to entertain the Commission's enforcement petition because Countrywide "resides, is found, or transacts business" in this judicial district.[5]  *See* 15 U.S.C. § 57b-1(e); Pet. Exh. 1 (Bartley Decl.) ¶ 3.  Such enforcement proceedings are initiated by an ex parte petition to the court and the issuance of an Order to Show Cause.  15 U.S.C. § 57b-1(e).

---

[5] Although Countrywide's owner Ellsworth has stated that the company has relocated to Lolo, Montana, records of the Montana Secretary of State reflect a Hamilton, Montana address.  In any event, Hamilton and Lolo are both located in this judicial district.

## III.   STATEMENT OF FACTS

### A.   The FTC's Investigation and Issuance of the CID

Countrywide is a telemarketer that sells magazine subscriptions.  Pet. Exh. 1

(Bartley Decl.) ¶ 4.  After the FTC settled its case against Your Magazine Provider and

Ellsworth, it began receiving consumer complaints about Countrywide's telemarketing

practices.  The FTC has received hundreds of consumer complaints about

Countrywide's business practices, including complaints about order fulfillment, its

billing and cancellation policies, and its statements about its relationship with

magazine publishers, credit card companies, and banks.  Consumers have also

complained that Countrywide's telemarketers have made deceptive representations and

engaged in abusive practices in telephone calls.  *Id.*

On May 6, 2013, as part of its investigation, the Commission issued a CID to

Countrywide directing it to respond to fifteen document requests and two

interrogatories.  Pet. Exh. 3 (CID).[6]  The Commission issued the CID as part of an

---

[6] The CID sought documents and responses to interrogatories from "any
Telemarketing Entity," which the CID defined to include other entities owned or
controlled by Countrywide's owner Ellsworth.  *See* Pet. Exh. 3 (CID) at 2.  After
counsel for Countrywide represented that his client did not have access to responsive
documents of related entities, the Commission served discovery requests on these other
[footnote continues on next page]

4

industry investigation to determine whether "telemarketers, sellers, or others assisting them" have engaged in "unfair or deceptive acts or practices in or affecting commerce" in violation of the FTC Act, or "deceptive or abusive telemarketing acts or practices in violation of" the Telemarketing Sales Rule ("TSR"). Resolution Directing Use of Compulsory Process in A Nonpublic Investigation of Telemarketers, Sellers, Suppliers, or Others, April 11, 2011 (FTC File No. 0123145) ("Resolution") (Pet. Exh. 2).

Among other things, the CID requested documents and information regarding customer orders, including magazine titles purchased, subscription terms, and customer payments. The CID also requested documents concerning: (1) the company's sales practices, including scripts, training materials, and audio recordings of sales calls; (2) the company's authority to offer specific subscription pricing and terms for magazines; (3) its affiliation with banks or credit card companies; (4) its agreements and payment arrangements with magazine clearinghouses; (5) its sources of prospective customers; (6) copies of customer complaints, and (7) employee contact and employment-related information. Pet. Exh. 1 (Bartley Decl.) ¶ 7; Pet. Exh. 3 (CID) at 10-12.[7] The CID

---

entities under the 2009 order. Those discovery demands are the subject of a pending contempt motion in that case.

[7] Page citations to Pet. Exh. 3 (CID) are to the Schedule attached to the CID.

directed Countrywide to provide the responsive materials no later than June 3, 2013.
*Id.*

### B.   Countrywide's Petition to Quash and the Commission's Ruling

On July 3, 2013, the Commission denied an administrative petition to quash and

directed Countrywide to comply with the CID by July 19, 2013.  Pet. Exh. 5 (FTC's

Order).  The Commission ruled first that all the CID's specifications were "clearly

relevant" to its investigation and that Countrywide had not shown that the CID is

overbroad or imposes an undue burden.  *Id.* at 4-6.  The Commission also rejected

Countrywide's contention that it was not required to produce customer order and

certain employee information because such information is sensitive or "private."  The

Commission explained that such information was fully protected by the FTC Act, 15

U.S.C. § 57b-2, and the FTC's Rules of Practice, 16 C.F.R. § 4.10, and that it is

"highly relevant" to the Commission's inquiry. *Id.* at 6-7.  Finally, the Commission

rejected as unfounded Countrywide's allegation that the Commission had acted in bad

faith in issuing the CID.  *Id.* at 7-8.

### C.   Countrywide's Incomplete Responses to the CID Specifications

Countrywide produced some responsive documents and information in July

2013.  Pet. Exh. 1 (Bartley Decl.) ¶ 9.  The production was deficient in numerous

ways.  For example, the company failed to produce audio recordings of sales calls,

customer billing and subscription information, the requested employee information, or

the company's contracts or payment arrangements with magazine clearinghouses.

Further, Countrywide produced only twelve customer complaints even though FTC

staff was aware of hundreds of such complaints.  The company refused to provide the

requested customer magazine titles or certain employee information, citing the

sensitive and private nature of that information.  *Id.*

In October and November 2013, Countrywide submitted additional responsive

materials.  *Id.*, ¶ 10.  Those submissions did not completely cure most of the

deficiencies.  Most notably, Countrywide continued to refuse to provide magazine

titles ordered by its customers, and failed to produce any customer billing information,

employee employment-related information, or any of the requested audio recordings of

sales calls.  *Id.*  Overall, Countrywide has failed to provide complete responses to 11 of

the 17 CID specifications.  *Id.*, ¶ 11.  Each of the deficiencies is specifically identified

in Appendix A to the supporting declaration, Pet. Exh. 1 (Bartley Decl.).

## IV.   LEGAL STANDARD FOR ENFORCEMENT

Actions to enforce administrative compulsory process are "summary

procedure[s] designed to allow 'speedy investigation of [agency] charges.'"  *EEOC v.*

*Karuk Tribe Hous. Auth.*, 260 F.3d 1071, 1078 (9th Cir. 2001) (citing *EEOC v. St. Regis Paper Co.*, 717 F.2d 1302, 1304 (9th Cir. 1983)). For this reason, they are instituted by a petition and an order to show cause rather than by a complaint and summons. *See, e.g., FTC v. Sherry*, 1969 WL 98583 at *3-4, 13 Fed. R. Serv.2d 1382 (D.D.C. 1969) (*citing, inter alia, Venn v. United States*, 400 F.2d 207, 212 n.12 (5th Cir. 1968)); *cf. FTC v. Carter*, 636 F.2d 781, 791 (D.C. Cir. 1980). Further, because these proceedings are summary in nature, discovery is allowed only in "exceptional circumstances." *St. Regis Paper*, 717 F.2d at 1304; *see also* Fed. R. Civ. P. 26(a)(1)(B)(v) (no initial discovery disclosures in such cases).

In this Circuit, courts are limited to determining: "(1) whether Congress has granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence is relevant and material to the investigation." *EEOC v. Fed. Express Corp.*, 558 F.3d 842, 848-49 (9th Cir. 2008) (citing *Karuk Tribe*, 260 F.3d at 1076); *see also United States v. Morton Salt Co.*, 338 U.S. 632, 652-53 (1950)). When these requirements are met, agency process must be enforced "unless the party being investigated proves the inquiry is unreasonable because it is overbroad or unduly burdensome." *NLRB v. N. Bay Plumbing, Inc.,* 102 F.3d 1005, 1007 (9th Cir. 1996) (citation omitted).

8

As we show in Part V, the Commission's CID meets all the criteria for summary enforcement.

## V. ARGUMENT

### A. The CID is Within the Lawful Authority of the Agency

The Commission has broad authority to investigate acts or practices that may violate Section 5(a) of the FTC Act or the TSR.  Section 3 of the Act, 15 U.S.C. § 43, empowers the Commission to "prosecute any inquiry necessary to its duties in any part of the United States."  Section 6(a) of the Act, 15 U.S.C. § 46(a), authorizes the Commission "[t]o gather and compile information concerning, and to investigate . . . the organization, business, conduct, practices, and management of any person, partnership, or corporation engaged in or whose business affects commerce," with certain exceptions not applicable here.  And as noted above, Section 20 authorizes the Commission to issue CIDs in all its investigations.   Thus, the Commission indisputably is authorized to conduct its investigation and issue the CID at issue here.

These statutes leave no room for Countrywide's argument that the Commission may not use process to obtain sensitive customer or employee information.  The Commission's authority to seek materials relevant to an investigation plainly encompasses the authority to request such materials.  Indeed, the Commission's

statutes and its Rules of Practice implicitly recognize the authority and expressly

protect such information from improper disclosure. *E.g.,* 15 U.S.C. § 57b-2; 16

C.F.R. § 4.10; *see* Pet. Exh. 5 (FTC's Order) at 6 (citing *FTC v. Invention Submission*

*Corp.*, 1991-1 Trade Cas. (CCH) ¶ 69,338, at 65,353, 1991 U.S. Dist. LEXIS 5523,

*15-16 (D.D.C. 1991), *aff'd*, 965 F.2d 1086, 1089 (D.C. Cir. 1992)).

Nor is there any basis for Countrywide's contention that the CID is beyond the

Commission's authority, because it seeks information about activities similar to those

the Commission challenged in its earlier action against Your Magazine Provider.  Pet.

Exh. 4 (Countrywide's Petition to Quash) at 5-7.[8]  The Commission issued the CID

only after it had received hundreds of consumer complaints about Countrywide's

practices. *See* Pet. Exh. 1 (Bartley Decl.) ¶ 4.  More importantly, nothing in the

previous settlement order and no legal principle precludes the Commission from

pursuing new or additional law violations now. *See* Pet. Exh. 5 (FTC's Order) at 7-8;

*see also FTC v. Nat'l Processing Co.*, No. 13-23437-MC-ROSENBAUM (S.D. Fla.

Dec. 18, 2013) (FTC retains authority to issue CIDs to investigate "additional

---

[8]  To the extent that Countrywide raises any other objections to the CID that it did not
raise in its petition to quash, it is barred from raising such claims here without having
first exhausted its administrative remedies. *See* 15 U.S.C. § 57b-1(f); 16 C.F.R. §
[footnote continues on next page]

wrongdoing" by respondents even where the agency had already filed suit "against

separate, albeit related, parties") (unpublished opinion) (Pet. Exh. 6).

Here, Countrywide cannot show that the CID was issued for an improper

purpose. *See FDIC v. Garner,* 126 F.3d 1138, 1146 (9th Cir. 1997) (subpoena

recipients failed to show bad faith or improper purpose by agency).  Accordingly, the

Commission is entitled to a presumption of regularity regarding its investigation and its

CID. *See FCC v. Schreiber*, 381 U.S. 279, 296 (1965).

## B. The Procedural Requirements were Followed

The Commission also properly followed all the required procedures in issuing

the CID.  The CID was issued pursuant to a valid Commission resolution, Pet. Exh. 2,

and was signed by a Commissioner and served in accordance with the Commission's

Rules of Practice. *See* 16 C.F.R. §§ 2.7, 4.4; Pet. Exh. 1 (Bartley Decl.) ¶ 5.  Further,

Countrywide received the required notice of the scope and purpose of the

investigation, *see* 15 U.S.C. § 57b-1(c)(2), 16 C.F.R. § 2.6, through the resolution and

the CID. *See* Pet. Exh. 2 (Resolution), 3 (CID).

---

2.10(a); *see also Morton Salt*, 338 U.S. at 653 (respondents must challenge agency
requests for information administratively before raising judicial challenge).

### C.   The CID Seeks Information and Documents that are Relevant and Material to the Commission's Investigation

The information and materials requested by the CID are also highly relevant and material to the FTC's investigation.  Pet. Exh. 1 (Bartley Decl.) ¶ 6.  Government agencies have wide latitude to determine what information is relevant to a law enforcement investigation.  Indeed, the Commission need not have a justifiable belief that wrongdoing has actually occurred, but "can investigate merely on suspicion that the law is being violated, or even just because it wants an assurance that it is not." *Morton Salt,* 338 U.S. at 642-43.  Thus, administrative process must be enforced "unless 'the evidence sought by the [CID] is "plainly incompetent or irrelevant" to "any lawful purpose of the agency."'" *Karuk Tribe*, 260 F.3d at 1076 (citation omitted).  This requirement is "not especially constraining." *Fed. Express,* 558 F.3d at 854 (citing *EEOC v. Shell Oil* Co., 466 U.S. 54, 68 (1984)).  A district court should "defer to the agency's appraisal of relevancy, which must be accepted so long as it is not obviously wrong." *RNR Enters., Inc. v. SEC*, 122 F.3d 93, 97 (2d Cir. 1997) (quoting *McVane v. FDIC* (*In re McVane*), 44 F.3d 1127, 1135 (2d Cir. 1995)).

The Commission is investigating whether Countrywide or its telemarketers engaged in unfair or deceptive acts or practices in selling magazine subscriptions.

12

Consumers have complained, among other things, that Countrywide failed to fulfill its subscription orders as promised; misrepresented its billing and cancellation policies, its affiliations with magazine publishers, banks, and credit card companies, and its authority to sell magazines on the terms it offers its customers; and that its telemarketers engaged in deceptive and abusive telemarketing conduct. As described above, the CID specifications at issue here seek, among other things, information and documents regarding customer orders, the company's sales practices, its authority to offer specific subscription pricing and terms, its affiliation with banks or credit card companies, its agreements and payment arrangements with magazine clearinghouses, its sources of prospective customers, customer complaints, and employee contact and employment-related information. Pet. Exh. 3 (CID) at 10-12; Pet. Exh. 1 (Bartley Decl.) ¶ 7. As the Commission concluded in its order denying Countrywide's petition to quash, all the CID specifications are "clearly relevant" to the Commission's investigation. Pet. Exh. 5 (FTC's Order) at 4-5; *see also* Pet. Exh. 1 (Bartley Decl.) ¶ 6 and Appendix A.

### D.    The CID Requests are Neither Overbroad Nor Unduly Burdensome

The CID consists of fifteen document requests and two interrogatories that are clear and specific. Indeed, Countrywide has not disputed the meaning of the CID

requests.  Each request was narrowly tailored to enable the Commission to determine if Countrywide has violated the FTC Act or the TSR and, to the extent possible, was designed to reduce Countrywide's burden.  For example, several CID specifications request only those documents that are "sufficient to show" or to "establish" the requested information and do not demand all responsive materials.  As the Commission concluded in its order, Countrywide's vague and unsupported assertions fall far short of showing that the CID imposed an undue burden or was overbroad.  Pet. Exh. 5 (FTC's Order) at 6; s*ee also FTC v. Texaco, Inc.*, 555 F.2d 862, 882 (D.C. Cir. 1977) ("Some burden on subpoened parties is to be expected and is necessary in furtherance of the agency's legitimate inquiry and the public interest.").

## CONCLUSION

For the foregoing reasons, this Court should enter an order, substantially in the form appended hereto, requiring Countrywide, within ten calendar days of entry of an order compelling compliance, to provide complete responses to the CID's written interrogatories and document requests, and a sworn certificate of compliance in the form provided in Pet. Exh. 3 (CID).

Respectfully submitted,

JONATHAN E. NUECHTERLEIN
General Counsel

JOHN F. DALY
Deputy General Counsel for Litigation

LESLIE RICE MELMAN
Assistant General Counsel for Litigation

/s/ _____

MICHAEL D. BERGMAN
Attorney
Federal Trade Commission
600 Pennsylvania Avenue NW, H-576
Washington, D.C.  20580
(202) 326-3184;  Facsimile:  (202) 326-2477
mbergman@ftc.gov

*Attorneys for Petitioner*
*Federal Trade Commission*

Dated:  May 19, 2014

15

## CERTIFICATE OF COMPLIANCE

Pursuant D. Mont. Local Rule 7.1(d)(2)(E), I hereby certify that the

foregoing document consists of 3,095 words, excluding caption, certificate of

compliance, table of contents and authorities, and exhibit index.

/s/ _____
Michael D. Bergman
Attorney
Federal Trade Commission